Please be seated. Our next case is Brown v. Grosskopf of Madigan. So for the appellant, Seth Uphoff. You are he, sir? Yes. And for the appellee, Jane Notts. Notes, excuse me. Jane Notes. And Esther Seitz, you are she? OK, are you both going to be arguing? Have you spoken to the clerk about dividing your time? OK. Mr. Uphoff, you may proceed, sir. May it please the court. Counsel. My name is Seth Uphoff, the newly elected state's attorney in Livingston County. I'm here on behalf of the appellant, Tom Brown, former state's attorney of Livingston County. Good morning. We're here today, your honors, because in 2001, a young woman by the name of Heather Tomich was traveling through Livingston County, stopped at a rest stop just outside of Pontiac. And while there, she was attacked, brutally beaten, kicked, and stomped, and left to die on the bathroom floor in that rest stop. Fortunately, her killer was quickly apprehended and convicted. At his sentencing hearing, the judge viewed photographs of the crime scene and noted the brutality, noted the blood on the victim, on the floors, on the walls, on the ceilings. He looked at the pictures of the victim and noted how she had been beaten beyond recognition. In finding the beating and the murder to be so brutal and heinous, he sentenced the defendant to spend the rest of his natural life in prison. Now, Adpolyte Groskopf believes he is entitled to view those photos, to view those materials, to see and read about the brutal and heinous attack that she suffered and for which she died. And he believes he can do so because of the Freedom of Information Act. I'm here because, as an Illinois state's attorney and as the state's attorney of Livingston County, I believe the Freedom of Information Act does not apply to state's attorneys. I'm a little confused. Groskopf was the defendant in this case? He was, Your Honor. This was stuff presented at his trial? There was no trial. It was at a sentencing hearing. He pleaded guilty? He did. This was stuff this material was submitted to and considered by the judge? It was accepted as evidence by the judge at the sentencing hearing, yes. Not all of it, I should say. A portion of it. OK. Did defense counsel have this material or see it at the sentencing hearing? I believe they would have. So I would assume that the defendant himself, personally, at that time, would have been able to look at it as well, would he not? I apologize, Your Honor. I guess I should clarify. Mr. Groskopf is the defendant in this action. He was not the defendant at trial. Oh, that's what I asked you. I apologize. Mr. Groskopf is the defendant in this action. He was not the defendant at that time. The defendant at that time was a man by the name of Kevin Bray. OK. So who is Mr. Groskopf? That's a good question, Your Honor. It's unclear who Mr. Groskopf is, but he is a member of the public. And with the Freedom of Information Act, he is attempting to utilize his status as a member of our public to receive this information. For what reason, we don't know. So Mr. Groskopf has requested this on behalf of the Livingston County State's Attorney's Office. We are in opposition of it. We don't feel that the Freedom of Information Act extends to Illinois State's attorneys. We believe that a plain reading of the Constitution of Illinois and the statute which created the Freedom of Information Act, that it becomes clear that state's attorneys are exempt. And we're exempt because we are founded under the judicial branch of the Illinois Constitution. State's attorneys originate, are founded there, have their genesis in the judicial article, Article 6 of the Illinois Constitution. And that's where we've been since our first inclusion into the Constitution. First inclusion would have been in 1848's Constitution, although that was never ratified. But then in the 1870 Constitution, state's attorneys were first included. And they were included in the judicial article. Mr. Opoff, if I might, I'd like to have you address the issue of rightness and whether or not this presented an actual controversy that made a declaratory judgment action the appropriate vehicle. Well, Your Honor, I'll be quite honest that I was not at that argument. I was not in office at that time. I have read the briefs. It's my understanding that the court at the lower level determined there was a case in controversy and made a ruling, and made a ruling adverse to us. And so we believe that the circuit court has declared that state's attorneys are subject to FOIA. And so I believe that presents a case in controversy for this court to review. Well, actually, the court granted the AG's motion to dismiss your complaint for declaratory relief. But in the process of doing so, declared that. You know, courts muse about lots of stuff, Counsel. But the actual judgment before us is simply granting the motion to dismiss your request for declaratory relief. That is correct, Your Honor. If, where do we stand at the moment in this matter? We have the attorney general who has issued an opinion saying, I think that this is a material subject to the FOIA. Is that right? Yes. And the Livingston County State's attorney could say, well, you know, take your opinion and $2.25. That'll get you a ride in the CTA. Next case. What are you required at the moment to do, if anything? Well, I believe that the attorney for Mr. Groskopf is still involved and is still named. And I believe they are still seeking the materials. So you say, no. Now what? Well, if my predecessor had done that, then Mr. Groskopf would have been able to file suit. And we'd probably end up right back here where we are. Well, but there would be a big difference. It might be a right proceeding at that point. Your Honor, I think that the- If you were actually ordered by a court to do something, let's say, or the court might say to the AG, forget about it. I mean, it's nice that you have that opinion. We deal a lot with attorney general opinions. Sometimes we think they're correct. That might be the situation. But it might be the trial court would tell the AG, for the reasons you've argued, nah. This state attorney's office doesn't fit. Well, Your Honor, I think we- I find myself here answering for an appeal that was filed before I took office. It is a little awkward. I am answering to the best of my ability. I believe that, based on what the court ruled at the lower level, I think it may have been more than just musing or dicta. I think the circuit court was making a finding, and a finding that would bind another court, another circuit judge or associate judge in our district. How about you? Do you feel bound by the musings of the trial judge, Judge Pacey's observations? I was not there and have not yet had the chance to meet Judge Pacey. It's difficult for me to say. But I can tell you that I don't believe that we are subject to FOIA, and I don't believe that we are required to turn over these materials. I believe we are exempt. Would it be safe to say, until you receive some judicial order to that effect, you intend to not comply? That is correct. And is there a judicial order to that effect now confronting you? I believe my predecessor believed there was. Well, that's a good response, a diplomatic one. How about you? You're the new state's attorney. You know, I received notice of this argument within the first 30 days of taking office. Was not aware of this case, other than having heard about it tangentially. So once I got it on my desk and knew about this argument, to be quite honest, your honor, I began honing in on the issue of whether or not state's attorneys are subject to FOIA. I didn't hone in on whether or not the procedural posture properly brings it before this court. I was somewhat under the assumption that it did. With that in mind, may I argue on that line of thought? As the FOIA Act pertains to state's attorneys, I think this court need only look at the Constitution and the FOIA Act itself, and apply plain meaning and the plain meaning doctrines. Actually quite simple when looking at it. State's attorneys are created in the judicial branch. The judicial branch is specifically excluded from the Freedom of Information Act. And that's supported by case law, and it's a tenant of statutory and constitutional construction because the FOIA Act listed both the legislative branch and the executive branch, but specifically excluded the judicial branch. And it's believed to be intended by the makers and framers and writers of a statute or a constitution that they specifically exempted that, and for good reason. And they specifically exempted the judicial branch, and that's supported in cases such as Drury, supported by Newman, and Copley even, which is relied upon by the defense. And the Constitution shouldn't be reinterpreted so as to be in keeping with the statute. We shouldn't ask the court to reread and reinterpret the clear structure of our Constitution so that it can be in keeping with the statute. It's the reverse that should be true. A statute should be read to be in keeping with the Constitution, and the statute should be one to be reinterpreted. In their case, the appellees would argue that the court should do just that, should reinterpret the structure of the Constitution. Because the FOIA Act had hoped to include the state's attorneys, even though it was never specifically mentioned, even though the state's attorney is found in the judicial branch and that was specifically included, it was their hope and intent that state's attorneys should be included and that this material should be subject. And so therefore, the court should reinterpret state's attorneys as they stand in the Constitution. Heavily on the Copley case and coming to that conclusion, because they say that the Copley case created a functional test, a functional approach to determining whether or not somebody falls within a particular branch of government, and thus whether or not they would be subject to the act. But in looking at Copley, it becomes clear that the only reason that that functional test or approach was applied was because the agency or department in that case was not founded in the Constitution. It was a pretrial services agency. Where did they fall? Are they executive? Are they legislative? Are they judicial? Well, it's not clear from looking at the Constitution. It's not clear from looking at the statute. So we need to formulate some sort of test. That's fine for a pretrial services agency or for somebody who's not named in the Constitution. But when it comes to a state officer specifically named in the Constitution and founded under a particular article, then no such test is needed. It's already there in the clear structure and language. And that's why Copley shouldn't have weight in terms of determining whether or not state's attorneys are subject to the act, because Copley dealt with an agency not named in the Constitution, and we specifically are. And also in looking at Copley, I think it's worth noting that the court there stated under Illinois law, the judiciary is exempt and is not narrowly defined. In that case, they were trying to make an argument that judiciary is defined as just the courts. But the court in Copley said, no, in Illinois, the judiciary is not narrowly defined. And that's why the circuit clerks are founded in there. They certainly aren't judges themselves. State's attorneys are not claiming we're judges. We're just claiming that we are founded and created under the judicial branch. And therefore, we are afforded, at least from FOIA, the protection that is afforded to the rest of the judicial branch, including the judges and including clerks. And apparently, based on Copley, including pretrial services agencies. And in the case of an AG opinion, which I know is not binding precedent, the case of McMurrow, in that case, the attorney general themselves cited Copley, not for the functional test, but for the proposition that the judicial is exempt. And they said the Illinois Courts Commission is exempt because it's under the judicial branch, not because it met the functional test. Copley was decided before the McMurrow opinion from the AG's position. They could have relied on Copley to say, here's the Illinois Courts Commission. Here's what their function is. Here's why they're clearly within the judicial branch. That's not what they did. They said it's founded, its genesis is in the judicial article. So therefore, it's in the judicial branch, end of story. But yet, here they are today with the state's attorney's office saying, well, even though you're founded in the judicial branch, different story this time around. And why is that? Well, because other times, courts have found you to be an executive. But the cases that they cite, and I would encourage the court or its clerks to check some of the citations of these cases which are cited by the appellee, wherein they state that the state's attorneys are members of the executive branch. If you're to go back and check those sites, ultimately, you'll work your way back to a handful of cases. And those handful of cases will fall into one of two groups. The first group will be a handful of cases that merely make a conclusory statement with no constitutional analysis to support why state's attorneys would be considered an executive or why a prosecutor is automatically in the executive branch. The second group of cases you'll find are a group of cases related to attorney generals. US Attorney General and the Illinois Attorney General. And they say the Attorney General, as a prosecutor, and the Attorney General is founded in the executive branch, and so therefore, they're executive. That's true. The Attorney General is. It's founded right there in the Constitution under the executive article. And it's specifically named as an executive officer. But that is not true for state's attorneys. However, over time, those findings have been used to simply make conclusory statements that state's attorneys are members of the executive branch. And I would assert to this court that's simply not the case. I'm not saying there aren't cases out there that may have a constitutional analysis, which would indicate that we fall under the executive branch. But they're not named in any of these briefs. And so far, I have not located one. I think going back again, it's clear from the structure of the Constitution, and the language of the Constitution, and the language of the statute that we are exempt. There is a motion that the defendants filed here. Did they not cross-complaint? There was, yes. I believe there was a cross-complaint filed. Is that still pending? I don't know if that was addressed by the Circuit Court. Complaint for declaratory injunctive relief that they filed as a cross-complaint in response. I don't believe that was addressed by the Circuit Court. So this appeal was taken when the trial judge granted their motion to dismiss your complaint, and said there's no just reason to let? I believe so. There are also, in addition to the constitutional issues, I believe there are also public policy issues that separate state's attorneys from other prosecutors. And the appellee, in their briefs and in their arguments, try to say, well, other prosecutors are doing it, so you have to also. And to that, I would say, I believe that argument went out the door after high school. Everybody else is doing it, so you must also. The other prosecutors that they mentioned, municipal prosecutors and attorney generals, are both not founded in the judicial branch of the Constitution. The AG is founded in the executive, and if they want to apply a functional test approach to municipal prosecutors, then I suppose that would be a location where that test may be appropriate. But as it pertains to state's attorneys, we are clearly founded there. And as a public policy issue, we're also in a unique position in terms of being a record holder. And I'm speaking of the Act in General. And I think the Act in General, the Freedom of Information Act, was designed, and I believe the intent, was to shine light on the government, to shine light on potential corruption, misuse of funds. Those are the types of things that I believe the Freedom of Information Act was initially intended to be used for. Not so that we can go in and dig up dirt on other individuals who are innocent victims in a criminal case. Was it really the intention, when they created this act, that an individual down the street could find out that maybe you had been involved, or been the victim of a rape, had been the victim of a sexual assault? Should they be able to go to their local prosecutor and say, I want to get those reports? You can redact their name if they want. I know who it is. I want to read the details. And with today's technology being what it is, that information is just a few clicks from being distributed to the world. So now somebody who's been sexually assaulted, who's been degraded and attacked, now their words, which they told to police officers, which they told to prosecutors, the descriptions of the acts that happened to them, the words of the defendants, the bold defendants, who sometimes will, in great detail, lay out what it was that they did to these victims. That is what needs to be given to the public to improve our government. Those are the things that are going to help make us have a better governmental system, and make sure that there isn't corruption, and shine a light on misuse of funds. No. They're just digging for dirt. They're looking for information that they're curious about, information that they can do whatever they want with once they have it. They can spread it to whomever they want. They can post it on the internet for all to see at any fetish site or any hate site. What about hate crimes that detail these things? Should those reports and the testimony of those victims then be plastered up on internet sites, espousing more hate against those same people? Is that what the intent was behind this act? I would argue that it wasn't. And that's just public policy that supports the underlying constitutional issues, which I believe are clear in this case. And that's why we're asking this court to overturn the ruling of the lower court. And if this court feels so inclined, and we would hope they would, to make a finding that the state's attorney is a member of the judicial branch. Thank you. Thank you, counsel. Ms. Notes. Thank you, your honor. Good morning. May it please the court. Counsel. My name is Jane Notes. I'm here on behalf of Illinois Attorney General Lisa Madigan. And as indicated, I will be dividing my time with my co-affiliate. This court should affirm the trial court's decision dismissing State's Attorney Brown's complaint as it pertains to the Attorney General for two independent reasons. The first is that there is no actual controversy between State's Attorney Brown and the Attorney General. And the second is for the reason that the trial court ultimately reached, and that is that State's attorneys are not a part of the judicial branch of government, and therefore, they are subject to FOIA. I will start first with the actual controversy requirement. An actual controversy, which is a prerequisite for a declaratory judgment action, requires an expression of intent to take legal or some other adverse action against another party. In the absence of such an expression of intent, the court is being asked to simply issue an advisory opinion on a state of facts that hasn't arisen and might never arise. And that is exactly what occurred here, insofar as the trial court relied on the Attorney General's non-binding advisory opinion that State's attorneys are subject to FOIA. That opinion is not enforceable against the State's attorney by either the Attorney General or by the requester, Mr. Groskopf. It was simply an effort by the Attorney General, as the General Assembly set out in FOIA, to obtain voluntary compliance with FOIA. Were this court to find that a non-binding opinion by the Attorney General in a FOIA matter can give rise to an actual controversy and subsequent litigation that would completely undermine the voluntary compliance regime that the General Assembly set up in section 9.5 of FOIA? You folks filed a cross-complaint for declaratory relief? The requester did file a cross-claim, a counter-claim, seeking to have an order to have the documents disclosed. Was it still pending? It was stayed by the trial court. The trial court, as you mentioned, included Rule 304 language in its order and stayed the counter-claim. So that still is before the trial court. So if we affirm, the matter will go back for further proceedings on the counter-claim? Yes, that is correct. That is correct. And that would be solely between the State's attorney and the requester. We're asking that the Attorney General be dismissed from the lawsuit. So I will then move on to the FOIA issue, on which we do agree with the trial court's determination that State's attorneys are not a part of the judicial branch and therefore are subject to FOIA. This morning, the State's attorney focused, I guess, specifically on two points. One is sort of a policy-based argument that if State's attorneys are subject to FOIA, invasions of privacy will result. That, however, is addressed not by the judicial exemption. It's addressed by Section 7 of FOIA, which specifically allows information to be withheld if it's personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. How about pictures of a murder victim? Well, that would be, of course, up to the court to determine whether that satisfies this criteria. Does it involve a fairly unwarranted invasion? You're the attorney general. What's your advice? In this particular case, I mean, I think it's a case-by-case circumstance, and it's not something that the public access counselor has opined on. I mean, possibly the Section 7 exemption wouldn't be met, but it may well be met. But to the extent that the State's attorney has concerns about invasions of privacy, he should have invoked the Section 7 exemption. And we could be here talking about whether that applies. We could have seen the pictures and the materials. He never turned them over to the PAC. As you heard, Mr. Uphoff began by talking about how this request included pictures of the murder victim. Was he right in his designation of what the request encompassed? I don't know the answer to that question, because while the public access counselor reached out to the State's attorney's office to ask to see in confidence the documents and the materials they were never provided. So we don't know what the request would have produced. And the public access counselor's office was never able to assess the request in light of the Section 7 exemption precluding disclosure of private information. But I guess my main point, though, is that to the extent the privacy concerns are in play, those are dealt with by the General Assembly under Section 7, and the State's attorney has never invoked Section 7. He's only relied on the judicial exemption. And that argument seems to be premised this morning on the fact that State's attorneys are identified in the judicial article of the Constitution. But what the Illinois Supreme Court's decision in Ingeminsen makes clear is the location of State's attorneys in the judicial article is sort of a historic anomaly arising from the fact that at the time they were put there, the drafters did that to make clear that they were state rather than county officials. Ingeminsen is very clear on this point in his discussion of the drafting history of the 1970 Constitution. And it was not that State's attorneys were not put in the judicial article, Ingemin says, to distinguish them as judicial rather than executive officers. And in fact, there are at least six decisions of the Illinois Supreme Court since the 1970 Constitution applying the functional approach and saying that State's attorneys exercise executive functions and therefore they are part of the executive branch of government. And there is a currently pending case, the McFatridge versus Madigan case before the Illinois Supreme Court where the Illinois State's Attorney Association has filed an amicus brief. We included it in our brief. And they take the position there that State's attorneys are part of the executive branch of government. So the State's attorney's argument this morning that they are part of the judicial branch is certainly not the view of the wide variety. What does that case involve that you're referring to? That case involves the question, the circumstances under which the attorney general has to indemnify a State's attorney in a section 1983 lawsuit when the state has to indemnify and provide counsel alleging alleged misconduct by the State's attorneys. And the brief, the amicus brief, is in our brief. And we do cite to the page in the brief where the Association of State's Attorneys takes the position that State's attorneys are a part of the executive branch of government. So for this court to now hold that solely by virtue of placement of State's attorneys in the judicial article, they are part of the judicial branch of government for FOIA purposes, would be in conflict with at least six Illinois Supreme Court cases. And it would also raise very serious separation of powers concerns. Because the reason the Illinois Supreme Court has held repeatedly that State's attorneys are a part of the executive branch of government is to avoid unconstitutional infringement of State's attorney's authority by the judiciary. In each of these cases, State's attorneys were arguing that they're a part of the executive branch of government, and the Illinois Supreme Court agreed. I'll make one final point before I conclude. And that is the analogy that the State's attorney this morning has made between circuit clerks, who are part of the judiciary for FOIA purposes, and State's attorneys. There are three reasons why circuit clerks are different. The first is a purely pragmatic reason. And that is that circuit clerks house judicial records. So if circuit clerks were subject to FOIA, the judicial exemption would be essentially a dead letter. And so that's one reason why circuit clerks have been held to be exempt from FOIA. The second reason, and this is one of the reasons the trial court relied on, is that circuit clerks by statute actually report to judges. That is not true of State's attorneys. And the third reason is a textual reason. And that is in the Constitution, the Constitution describes circuit clerks as officers of the court. It does not describe State's attorneys the same way. So for three very important reasons, circuit clerks are distinguishable from State's attorneys. So just to conclude for two reasons, therefore, we would request that this court affirm the trial court's judgment dismissing the complaint as to the attorney general. First, because the attorney general's non-binding advisory opinion did not create an actual controversy between the State's attorney and the attorney general. And second, because the trial court correctly concluded that State's attorneys are not entitled to the judicial exemption from FOIA because they are not part of the judicial branch of government. Thank you, counsel. Ms. Seitz. May I please the court? My name is Esther Seitz, and I represent for the question my colleagues have. When responding to my client's record request in this case, the State's attorney raised one reason, and one reason only for denying the request. And that was, according to the State's attorney, he is not subject to the FOIA. What he didn't claim is an exemption. And the FOIA provides for several dozen exemptions in Section 7 of the Freedom of Information Act. Those exemptions include the personal privacy exemption. And gruesome photographs of murder pictures have been held to be exempt under the personal privacy exemption. Of course, you have to look at the specific photos. Did your client request them? My client can request them from the State's attorney, yes, because the State's attorney is a public body under the FOIA. Now, did he request the photographs? My client requested the entire file. Including the photographs? If there's photographs in the file, which we don't know, because we were never provided an itemization of that file, then those would certainly be covered by the request. But there might be exemptions that apply. However, because the State's attorney did not cite those exemptions, and any exemptions have to be cited, if at all, in the denial letter, and the FOIA is clear on that, then those are waived. This was a murder conviction pursuant to a guilty plea 12 years ago in Livingston County? Yes, that's correct. Who is Matthew Groskopf? Matthew Groskopf is simply a member of the public who made this FOIA request. And for purpose of the FOIA, it really doesn't matter who the specific requester is. Everybody who's a member of the public has a right to public records. There are 48,000 people, if my understanding is correct, sitting in the Illinois Department of Corrections at the moment, most of whom, I believe, aren't happy about it. Are they all eligible to file similar FOIA requests with regard to the State's attorney's office? To be clear, my client is not in jail, and he's not a criminal and not involved. That doesn't answer my question. I understand.  have a right to file FOIA requests as well? So if we were to answer this question yes, is there any reason to think that the Livingston County State's attorney's office wouldn't be subject to requests by anyone who is now sitting in prison as a result of the conviction arising out of Livingston County? Give us all records from your office pertaining to my case. The Livingston County State's attorney, like all other bodies, would have to respond to FOIA requests. I would assume that a lot of records in a prosecutor's file would actually qualify for some of the various exemptions that are listed in the FOIA. That is a different issue. And that's an issue that never came up here, and that is really important. The only reason here that the state attorney is relying on is that he's not a policy person. Well, I understand that. But I want to deal with some policy questions about where we're going with regard to the argument you're making that the state's attorney's office is subject to FOIA. Yeah, the state's attorney's office is subject to FOIA. But that in and of itself does not mean that all these sensitive records would be revealed, which is the policy. How about 48,000 inquiries by the people sitting in the Department of Corrections? That is part of being in the government. That's part of training. So I mean, hey, just chug it up, Mr. Uphoff. However many hundreds of people who might be in penitentiary right now coming out of Livingston County, you've got nothing better to do than your office of three people, Mr. Uphoff. You know, just go through all your files. Oh, and by the way, this is 11 years old. What's the limitation on time? The FOIA doesn't have one. So we can go back maybe 20 years worth. So the 48,000 might be an unduly optimistic figure, wouldn't it? I honestly don't know the number, but. Does any of this, should any of this affect our assessment on whether or not this door you want to fling open with regard to the state attorney's office should be open? That door is flung open with respect to every other public body, state agency, and even for the courts. Obviously, the courts are not covered by the FOIA. But they, too, are under an obligation to disclose records. And that is a very good thing, because that is how corruption is uncovered. And that is also how the public knows what the elected official is doing. And that is a good thing. So without limitation on who or when the state's attorney's office is required. And I guess to go back and dig out stuff 11 years old, who knows where they are or what they've got. They have to go. And they're under a mandate, good faith effort, to try to find these records and documents. Is that right? Yes, that's right. Just like any other public body. Do you see any problem with any of that? No, your honor, I don't. OK, go ahead. I can see how it would be a lot of work. But the other public bodies manage that as well. What relief was requested in the counterclaim? The relief we requested ultimately is that, well, it is a ruling on this substance of this case, which is whether we want a declaratory judgment or a ruling from the court that the state's attorney is subject to the FOIA. But also, we are asking for the records to be turned over. So we're asking for an order that the state's attorney is subject to the FOIA and therefore turn over the record without him having cited an exemption and him not having waived that issue. As long as the court holds and this court affirms that the state's attorney is subject to the FOIA, it would mean that the records be turned over. And just thinking through this procedurally, if the trial court's dismissal is affirmed, then what happens to the counterclaim? The counterclaim remains in the trial court. We would then proceed to ask for judgment on that claim. Now, on the counterclaim, we also ask for attorney's fees, because that is another thing we're entitled to under the FOIA. Who pays that? It would be paid by the public body, so the state's attorney. That's in section 11 of the FOIA. Under what circumstances would the state's attorney have to pay that fee? Just anyone who loses? Or is it some finding needed to be made about the willfulness or accuracy of their dispute? No, no finding for willfulness, but we would have to prevail. So if you win this 11-year-old lawsuit, they have to pay your attorney fees? It's really not an 11-year-old lawsuit. Well, it's an 11-year-old request. A request for 11-year-old documents. The records were generated 11 years ago. Yeah. So if you prevail, then they have to pay your hourly rate? They would have to pay our fees, the fees we incurred. Now, that is not the subject of this appeal. The subject of this appeal is obviously whether or not the state's attorney is subject to FOIA. And he is, because public body is defined very broadly in Section 2 of the Act to include all legislative, executive, administrative, and advisory bodies of the state and of the county. And the Illinois case law is very clear that prosecutors are part of the executive, and therefore not accepted, as Copley said, as part of the judiciary. And in fact, if the state's attorneys and the judiciary were part of the same governmental branch, it seems really difficult in a criminal case for a defendant to get a fair trial, because he is being prosecuted by the same entity that's supposed to be giving him a fair trial. That's supposed to be a fair and impartial decision maker. So to hold that the prosecutor bringing the charges and the judge making the decision are part of the same governmental branch would be very offensive to the separation of powers doctrine, and would seem to violate a criminal defendant's right to a fair trial. So that would be the awful consequence of accepting the technical argument that we're in the state constitution, the state's attorney's office falls. Right. The state's attorney's office. We're upending Illinois jurisprudence, just leaving it in the shadows. And in this country as well. Let me ask one additional question. I'm entering the intersection on the yellow here, so I'm OK, I think. That is, if the trial court's decision is affirmed, but not on the issue of whether or not the state's attorney is a judicial body, but instead, because it's not an actual controversy at this point, then what happens at the trial court in regards to the counterclaim? Is that the same disposition applied? Does that same disposition on the issue apply to the counterclaim? It's not an actual controversy? No. On the counterclaim, there certainly isn't an actual controversy. It's not a declaratory judgment action. It's a regular claim under the Freedom of Information Act. And the Freedom of Information Act says that when a requester is denied access to records, he has a right to file suit. And that is simply what the counterclaim is. It is our entitlement, or our request, to the court for relief, because we were denied access to records. If the state's attorney argues that you shouldn't be entitled to this on privacy grounds, because this is a brutal murder case, does the burden shift to you to demonstrate why you are asking this, or why you should be entitled to it? Or you can just say, hey, we've got to investigate corruption in the state's attorney's office in Livingston County, and that's what we want. Is that good enough? When it comes to the privacy exemption in Section 7.1c, the personnel privacy exemption, it is a balancing test, ultimately. And yes, we would have to make a showing as to why there is a public need for it, and why the public interest in having access to that information would outweigh any harm to the person depicted. You're probably the victim's family, since she has died. And that balancing analysis, ultimately, is made by the courts. But there would certainly be a burden for us to show the public interest in that type of information. OK, thank you, counsel. Mr. Apolf? Am I right? Three people in your office? I was just tired of four, so. OK. Well, then, no problem. That's right. Your Honor, first of all, in referencing the last point that was made, the burden is on the record holder. The burden is on us to prove, with clear and convincing evidence, that this stuff should not be turned over. And also, on that same note, whose privacy issue is in question. I believe the Freedom of Information Act lists the privacy of the person who's named. If the privacy of the person who's named is dead, does that mean somebody else can assert their right, or is that right gone? And we no longer can argue that privacy interest remains. That's unclear. But before we even get there, we'd have to be found to be a public body subject to the act. And thankfully, Mr. Jednak, who briefed this case, was here today and was able to help point a few things out for me, because he was involved earlier in the case. And I would direct the court's attention to the court order from Judge Pacey. And I believe it is paragraph number 12, where he says, the state's attorney's office is a public body. And the plaintiff's complaint, based entirely on the proposition that his office is not a public body, is dismissed with prejudice. So I think that there is what provides us the opportunity to come before this court and state that, even if procedurally there were a way to go back and deal with another complaint, because there was no case or controversy with the Attorney General's office, it's clear from Judge Pacey's ruling what he's going to do and what his thought is that we're subject to this, that we're a public body. So we would go back. He would say, go read paragraph number 12. Again, folks, and right back here we are. Is this the perfect procedural procedure? Maybe not, but here we are, and we'd like to address it while we're here. Referring to the separation of powers argument also made by the athlete, the separation of powers between branches of the government is implicated until one branch intrudes upon the province of another or is attempting to intrude upon the province of another. And there's no accusations of that here. They're just saying, well, if you're under the same umbrella, if you live in the same house, even if you're on separate sides of the house, then there's automatically a separation of powers problem. That's not the case. There would have to actually be action on the part of the judiciary or on the part of the executive invading into each other's province before you would have such a separation of powers issue. Referring to the argument regarding Ingmanson that the Ingmanson court put us in the sixth judicial article because they needed to find a way to make us a state officer. That's just not true. They could have put us in the executive, just like the attorney general. They could have made us a state officer under that article of the Constitution. They didn't have to do it under the sixth, but they did it under the sixth. Well, is counsel's argument, is your disagreement with counsel's argument or what the Supreme Court said? My disagreement is with her argument, I should say. I think if the court is to go back and look at it. Has she mischaracterized the Illinois Supreme Court decision? Not maliciously so, but I believe she has. Very diplomatically put. I'll try, Your Honor. In referring also to the State's Attorney's Association amicus brief, that is a case where I think bears more on, and I know she didn't write the brief, but in citing that, if the court reads that amicus brief, it's clear that what the State's Attorney's Association is asserting is that we are state officers. They are not asserting that we are executive officers. There is one sentence, which is a quote from a case, that is what they're relying upon there. We're familiar with that's an appeal from this court. From this court, all right. Lastly, Your Honor, I wanted to point out that, as Mr. Yednack pointed out to me, they want to continue to say they should have cited an exemption, they should have done this, they should claim this, they should claim that. There's a lot of shoulds in there, but those shoulds only come up if we're determined to be a public body and if the act applies to us. And if it doesn't, then all those shoulds carry no weight. So we'd ask this court to find that the State's Attorney's Office is a part of the Judicial Branch, not a public body, not subject to FOIA. Thank you, counsel. I take this kind of advice from being recessed.